IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WASTE MANAGEMENT, INC.,

       Plaintiff,                                          06cv1348
                                                      **ELECTRONICALLY FILED**
   v.

ROBERT ARNONI,

       Defendant.

_____

ROBERT M. ARNONI,

       Plaintiff,                                          06cv1389
                                                      **ELECTRONICALLY FILED**
   v.

WASTE MANAGEMENT, INC., DAVID P.
STEINER, JAMES E. TREVATHAN,

       Defendants.

## **MEMORANDUM OPINION**

**November 7, 2006**

       These related cases arise from the 1996 acquisition of the M.C. Arnoni Company by USA Waste Services, Inc., now known as Waste Management, Inc. ("WMI"). The operative facts that are pertinent to the two pending motions are not in dispute.

<u>     **Civil Action No. 06-1348 - Waste Management, Inc. v. Arnoni**</u>

WMI filed its complaint for a declaratory judgment against Robert M. Arnoni on October 10, 2006, claiming diversity of citizenship jurisdiction under 28 U.S.C. § 1332: WMI alleges it is a citizen of Delaware, its place of incorporation, and of Texas, where it maintains its principal place of business, and that Mr. Arnoni is a citizen of Pennsylvania.

WMI seeks only declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("DJA") regarding its rights and liabilities under a Stock Option Agreement. Specifically, WMI requests this Court to declare that Arnoni's right to exercise 66,000 stock options expired prior to his attempt to exercise said options on May 16, 2006. The value of exercising the options as of that date would be about $619,000.

The DJA complaint alleges that in 1996, Arnoni conveyed his interests as a principle in the M.C. Arnoni Company (a Pennsylvania business now known as USA South Hills Landfill, Inc.) to WMI's predecessor in exchange for, *inter alia*, a three year Employment Agreement. That Employment Agreement was subsequently extended until August 31, 2001 in order to allow Arnoni's rights under the Stock Option Agreement, which the Employment Agreement incorporated, to fully vest. Under these agreements, Arnoni's options for 110,000 shares of stock vested in stages from August 1999 through August 30, 2001. WMI alleges that Arnoni could exercise these vested options only within three months of termination of employment with it or its subsidiaries which occurred on August 31, 2001, that he in fact exercised 44,000 options before that time, but that he left 66,000 options on the table which expired long before he attempted to exercise the stock options in May 2006.

**Motion to Dismiss (doc. no. 4)**

Arnoni has filed a motion to dismiss the complaint arguing that this Court should decline to exercise its discretionary jurisdiction under the DJA in light of his previously filed state court complaint.  When settlement discussions broke down, the parties rushed to file their respective suits: WMI's was filed with this Court at 4:59 pm, October 10, 2006, according to the docket; Mr. Arnoni's was filed at 1:26 pm, according to the motion to dismiss, in the Court of Common Pleas of Allegheny County, Pennsylvania, against WMI as well as two officers of WMI, David P. Steiner and James E. Trevathan, all of whom are alleged to be statutory "employers" under Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 P.S. § 206.2a.  Arnoni's state court complaint states five claims against WMI only, and one, Count 6, against WMI, David P. Steiner and James E. Trevathan jointly: Count I - Breach of the Stock Option Agreement; Count II - Reformation of the Contract (Mutual Mistake); Count III - Fraud in the Execution; Count IV[*] - Unjust Enrichment; Count V - Modification by Practice of the Parties; Count VI - Wage Payment and Collection Law.

WMI responds that it is within the Court's jurisdiction and its discretion to entertain and resolve the DJA action, and that it should do so, despite the existence of parallel but broader state court proceedings.

**Civil Action No. 06-1389 - Arnoni v. WMI, Steiner and Trevathan**

On October 18, 2006, defendants in the state court action, WMI, Steiner and Trevathan, filed a Notice of Removal of that action to this Court pursuant to the removal statute, 28 U.S.C. §§ 1441 and 1446, addressed to this Court's diversity jurisdiction, 28 U.S.C. § 1332.  In support

---

[*]There are two Counts identified as "Count IV."

3

of this Court's diversity jurisdiction, defendants assert that neither WMI nor Steiner are citizens of Pennsylvania, as is plaintiff, and that while Trevathan is a citizen of Pennsylvania, this Court should disregard Trevathan's citizenship because he has been fraudulently joined in order to defeat diversity jurisdiction.

### Motion to Remand (doc. no. 7)

Mr. Arnoni has filed a motion to remand this case to the Court of Common Pleas of Allegheny County because defendants Trevathan and WMI are citizens of Pennsylvania and therefore, there is no diversity jurisdiction to sustain the removed state court action. Plaintiff asserts that his claim against Mr. Trevathan is a bona fide claim under Pennsylvania's WPCL, and not a claim injected solely to defeat diversity, Motion to Remand (doc. no. 7) at ¶¶ 28-43, and that WMI is a citizen of Pennsylvania because its website and SEC filings indicate it does business in and has "a principal place of business" in Pennsylvania. Motion to Remand (doc. no. 7) at ¶¶ 15-20, 45-48.

Defendants filed a response and brief in opposition (doc. nos. 11-12), and plaintiff has filed a reply thereto (doc. no. 15). After careful consideration of the dueling complaints, the motion to dismiss and response, the motion to remand, response and reply, and the respective memoranda of law, this Court will grant the motion to remand Civil Action No. 06-1389, because Arnoni has stated a bona fide claim against Trevathan under the WPCL and therefore there is not complete diversity of citizenship, and will grant the motion to dismiss Civil Action No. 06-1348.

**Discussion**

Because federal district courts have limited jurisdiction, the removal statutes are strictly construed against removal. *E.g., American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951); *Batoff v. State Farm Ins. Co*, 977 F.2d 848, 851 (3d Cir. 1992) (citations omitted); *LaChemise Lacoste v. Alligator Co.*, 506 F.2d 339 (3d Cir. 1974). All doubts as to substantive and procedural jurisdictional prerequisites must be resolved in favor of remand. *E.g., Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir. 1985); *Sterling Homes, Inc. v. Swope*, 816 F. Supp. 319, 323 (M.D. Pa. 1993). The removing defendant bears the heavy burden of persuading the Court to which the state action was removed that it has jurisdiction under the removal statutes. *Batoff*, 977 F.2d at 851; *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991).

Removal is strictly a statutory right and the procedures to effect removal must be followed. *Lewis v. Rego Co.,* 757 F.2d 66, 68 (3d Cir. 1985). Removability is to be determined "only by reference to the plaintiff's initial pleadings," *Swope,* 816 F. Supp. at 323 (citations omitted), at the time of filing the petition for removal. *Abels,* 770 F.2d at 29.

The United States Court of Appeals for the Third Circuit set forth in *Boyer* the following well established principles with regard to an issue of fraudulent joinder:

> Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a "heavy burden of persuasion." *Steel Valley [Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)] (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)).
>
> This court has recently stated that joinder is fraudulent "where there is *no reasonable basis in fact or colorable ground* supporting the claim against

> the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Abels,* 770 F.2d at 32 . . . A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff. . . . "If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983).

*Boyer,* 913 F.2d 111 (emphasis added; some citations omitted). *See also Providers of Northeast Pennsylvania, Inc. v. Maxicare Health Plans, Inc.*, 677 F.Supp. 302, 304 (M.D. Pa. 1987) ("the removing party must demonstrate either 'that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.' . . . In short, this court must examine whether, in the event that the case were remanded to state court, there is any possibility that plaintiffs could establish a cause of action against [defendant]. In other words, the district court's inquiry is whether there is any possibility that plaintiffs could succeed in state court against a dispositive motion filed by [defendant].").

The motives of the plaintiff are irrelevant in determining whether plaintiff's joinder of a resident defendant was "fraudulent' in order to defeat jurisdiction. The Supreme Court of the United States has held that,

> in a removal proceeding the motive of a plaintiff in joining defendants is immaterial . . . . [W]here there is [ ] prima facie joint liability, averment and proof that resident and nonresident tortfeasors are jointly sued for the purpose of preventing removal does not amount to an allegation that the joinder was fraudulent, and will not justify a removal from the state court.

*Mecom v. Fitzsimmons Drilling Co., Inc.*, 284 U.S. 183, 189 (1931); *see also Abels,* 770 F.2d 32 ("[t]he fact that the plaintiffs' motive for joining a Doe defendant is to defeat diversity is not

considered indicative of fraudulent joinder"); *Moorco Int'l v. Elsag Bailey Process Automation*, 881 F.Supp. 1000, 1006 (E.D.Pa. 1995) ("there is nothing improper about formulating and executing an effective litigation strategy, including selecting the most favorable forum for the client's case. Thus . . . joinder cannot be deemed fraudulent because [plaintiff] finds it advantageous to pursue . . . claims in . . . state court").

The *Boyer* Court held "where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses. Instead, that is a merits determination which must be made by the state court." *Id.* at 113. It is improper to conflate the failure to state a claim "merits" challenge with the lack of jurisdiction challenge; the two issues are not the same as the Court of Appeals made clear in *Batoff,* which squarely rejected the mixing of the appropriate standard for assessing claims of fraudulent joinder with the standard for determining whether plaintiff has stated a claim under Fed.R.Civ.P. 12(b)(6):

> [W]hile the [district] court did not characterize its analysis as being the same as it would make on a ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), that is exactly what it was. But *the inquiry into the validity of a complaint triggered by a motion to dismiss under 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder.* Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted . . . . [T]he district court erred in converting its jurisdictional inquiry into a motion to dismiss.

*Batoff,* 977 F.2d 852 (emphasis added). *See also Stanley v. Exxon Corp.,* 824 F.Supp. 52, 53-54 (E.D.Pa. 1993) ("In the removal context, the court's inquiry into the validity of a claim against a non-diverse defendant is *less probing than that undertaken in the context of a motion to dismiss*. Regardless of whether such a claim will ultimately fail to state a cause of action, fraudulent

joinder exists only if the claims against the non-diverse defendant are so devoid of merit as to be 'wholly insubstantial and frivolous.' *Batoff v. State Farm Insurance Company*, 977 F.2d 848, 852 (3d Cir. 1992)." emphasis added).

### **WMI is not a citizen of Pennsylvania.**

Defendants first assert that WMI is not a citizen of Pennsylvania merely because it conduct business in and has <u>a place</u> of business in Pennsylvania, as plaintiff claims. For purposes of diversity of citizenship jurisdiction, a corporation has <u>dual</u> citizenship and is deemed a citizen of two states: its state of incorporation and the state of its principal place of business, which may or may not be synonymous with "principal office". 28 U.S.C. § 1332(c)(1); *Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287 (3d Cir. 1998)). A corporation may have offices and do business in numerous states, perhaps even all of them, but it is not a citizen of every state in which it does business; to the contrary, a corporation has <u>only one</u> principal place of business for purposes of establishing diversity jurisdiction. *Bruesewitz v. Wyeth, Inc.*, 2006 WL 782437 *2 (E.D. Pa. 2006), citing *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 853 (3d Cir.1960) (a corporation may have "literally dozens of important places of business one of which we must pick out as the principal one because the statute says so."); *Alex v. Eckerd Drugs*, 2006 WL 2372032 *1 (W.D. Pa. 2006), citing *Kelly*.

Plaintiff points to certain SEC filings and WMI's website in an attempt to establish that WMI has offices and conducts business in Pennsylvania, but this evidence does not demonstrate that WMI is incorporated or has its principal place of business in Pennsylvania. On the contrary, after careful review of the motion to remand, response and affidavit attached thereto, and plaintiff's reply to the response, the Court finds that WMI is a citizen of Delaware, its place of

incorporation, and of Texas, where it maintains its principal place of business.  Thus, WMI does not destroy diversity jurisdiction since it is not a citizen of Pennsylvania.

### **Trevathan is a citizen of Pennsylvania and joinder is not fraudulent**.

The Court also finds, however, that Mr. Trevathan is a citizen of Pennsylvania, that plaintiff's claim against him under the WPCL is at least a colorable claim, and that his joinder in the state court complaint cannot, therefore, be deemed fraudulent.

In light of the above standards, plaintiff (in state court) Arnoni's WPCL claim against Trevathan cannot be said to be "wholly insubstantial and frivolous," nor is there "no reasonable basis in fact or colorable ground" supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.  In Pennsylvania, an employee's stock option agreement may be deemed "wages or compensation" within the meaning of the WPCL.  *Scully v. US WATS, Inc.*, 238 F.3d 497, 517-18 (3d Cir. 2001) ("WPCL does not create a new right to compensation, but rather, merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay. . . . We differ with the District Court in that, based on its factual findings, we believe Scully's stock option constituted earned compensation. . . . . [W]e are confident that the Pennsylvania Supreme Court would conclude that the stock option granted to Scully, essentially a call option, constitutes 'wages or compensation' within the meaning of the WPCL.").

Moreover, the WPCL's definition of "employer" for purposes of civil liability includes "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and <u>any agent or officer of any of the above-mentioned classes</u> employing

9

any person in this Commonwealth." 43 P.S. § 260.2a (emphasis added). See *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997); *Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atlantic Promotions, Inc.*, 856 A.2d 102 (Pa. Super.), allocatur denied, 878 A.2d 864 (Pa. 2004); *Amalgamated Cotton Garment and Allied Indus. Fund v. Dion*, 491 A.2d 123 (Pa. Super. 1985). Arnoni's complaint alleges that Steiner and Trevathan are both policy-makers having authority to make payment decisions regarding employees, including payment of stock options, and this Court must assume those assertions to be true at this juncture.

In their response and brief in opposition, defendants make strong arguments as to why neither WMI nor Trevathan are statutory employers under the WPCL. However, defendant's arguments, intriguing though they be, go to the merits of their defenses in the state court action, and cannot be determined by this Court in considering the issue of fraudulent joinder.

Because a district court must resolve all contested issues of substantive fact in favor of the plaintiff, and must resolve any uncertainties as to the current state of controlling substantive law in favor of plaintiff, Arnoni's state court complaint raises the *possibility* that the state court would find that it states a viable cause of action against WMI and Trevathan as employers under the WPCL, and certainly raises a *colorable* WPCL claim against Trevathan. Accordingly, plaintiff has not fraudulently joined a defendant to defeat jurisdiction, and this case must be remanded to the state court because there is not complete diversity of citizenship. An appropriate remand order will be entered.

### Motion to Dismiss Declaratory Judgment Action

In a declaratory judgment action filed pursuant to the DJA, 28 U.S.C. §2201, it is within the discretion of the federal court whether to hear the controversy at all, defer resolution until the

disposition of related state court proceedings, or proceed unabated by parallel state proceedings. District courts are "under no compulsion to exercise" the discretion granted by the DJA. *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir.2000) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). "The central question is whether the controversy may 'better be settled' in the state court . . . ." *United States v. Pennsylvania Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (dismissing the action because the same issue was pending in state court and because the court believed the declaratory action was an attempt to forum shop).

In *Nationwide Mutual Ins. Co. v. Lowe*, 95 F.Supp. 2d 274, 275 (E.D.Pa.. 2000), the District Court summarized the discretionary nature of DJA actions:

> Whether or not to entertain a declaratory judgment action is within the sound discretion of the district court. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In determining whether or not to exercise jurisdiction, a district court "should ascertain whether the questions or controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." *Brillhart* . . . .  The Third Circuit in *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3rd Cir.1989), stated that a declaratory judgment action should not be used as a race for res judicata. *See id.* at 1225. Where there is a potential conflict, the federal court should stay its determination of the declaratory judgment action, if the " 'same factual question' lies at the heart of both an insurance coverage dispute and the underlying tort action ." *Id.* (citations omitted) (footnotes and parallel citations omitted).

In *NYLife Distributors, Inc. v. The Adherence Group,* 72 F.3d 371 (3rd Cir. 1995), *cert. denied sub nom* 517 U.S. 1209 (1996), the United States Court of Appeals for the Third Circuit reaffirmed the *Brillhart*, *Wilton, Terra Nova* line of cases, stating:

> Some fifty years ago, in *Brillhart*, . . .  the Supreme Court held that the district courts may decline to hear lawsuits brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), in favor of pending state actions for reasons of judicial economy, even where they have jurisdiction . . . .
>
> Reversing the court of appeals and remanding to the district court for

> another determination of the motion, the Supreme Court stated that "*[a]lthough the [d]istrict [c]ourt had jurisdiction . . ., it was under no compulsion to exercise that jurisdiction[]*", 316 U.S. at 494, and made clear that the *district courts have the discretion to dismiss a declaratory judgment action when "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.*" *Id.* at 495. The Court did not articulate all of the considerations which should guide a district court's decision in this regard; it did provide, however, that the court "should ascertain whether the questions in controversy between the parties to the federal suit[ ] . . . can better be settled in the proceeding pending in state court[ ]", assess "the scope of the pending state proceeding and the nature of the defenses open there[ ]", and evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding, etc." *Id.*

72 F.3d 376-77 (parallel citations omitted; emphasis added).

Under all of the circumstances of this case, the Court finds it is not an appropriate exercise of this Court's discretion to hear this declaratory judgment action. The federal DJA action and the state court action were filed nearly simultaneously, so neither gets an edge for being first filed. The sole issue in the DJA action is a simple matter of Pennsylvania contract law and contract interpretation that implicates no federal statue and raises no federal claims or defense. On the other hand, the state court complaint raises the issue raised in the federal DJA suit *and additional* colorable state law claims, and names defendants who cannot be named in the federal suit, and an interpretation of the Stock Option Agreement in the DJA action would not be dispositive of all of the claims in the state court complaint. Because the Court is granting the motion to remand at Civil Action No. 06-1389, which will continue therefore in the Court of Common Pleas of Allegheny County, and because there is little to be gained and many judicial and legal resources to be squandered by conducting parallel proceedings, the Court will grant the

motion to dismiss.

As the United States Court of Appeals for the Third Circuit stated in *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 136 (3d Cir. 2001):

> In order to maintain the proper relationship between federal and state courts, it is important that district courts "step back" and allow the state courts the opportunity to resolve unsettled state law matters. As *Wilton* reminded us, the Declaratory Judgment Act confers a discretion on the courts rather than an absolute right on litigants. *Wilton*, 515 U.S. at 287. It follows that the state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum. When the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts. Unusual circumstances may occasionally justify such action, but declaratory judgments in such cases should be rare.
>
> We appreciate the efforts of the able and conscientious district judge in this case to expedite the disposition of litigation assigned to him, but as we have mentioned, other overriding considerations come into play. Decisions in declaratory judgment actions must yield to "considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. . . .
>
> Whether declaratory relief should be granted "will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287. We conclude that the assumption of jurisdiction under the Declaratory Judgment Act in this case was not consistent with a sound exercise of discretion.

(parallel citations omitted)

As in *Summy*, this Court will exercise its discretion to decline to entertain the federal DJA action, and will dismiss the complaint in deference to the state court action.

An appropriate order will be entered.

s/ Arthur J. Schwab<br>
Arthur J. Schwab<br>
United States District Judge

cc:     All counsel of record